**Darryl RESPRESS, by his father and next friend, Horace Respress, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**Vincent J. FERRARA, individually and as Judge of the New York City Family Court, and Florence M. Kelley, individually and as Administrative Judge of the New York City Family Court, Defendants.**

**No. 70 Civ. 4853.**

United States District Court,
S. D. New York.

Dec. 14, 1970.

M. F. Y. Legal Services, Inc., New York City, by Marttie L. Thompson, Sue Ann Shay, New York City, of counsel; Community Action for Legal Services, Inc., New York City, by John DeWitt Gregory, Marcia Lowry, New York City, of counsel, for plaintiff.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; Charles A. La Torella, Jr., New York City, of counsel.

LASKER, District Judge.

Darryl Respress is a fifteen-year old boy whose trial on charges of juvenile delinquency is pending in the New York City Family Court. He brings this suit for declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201. Jurisdiction is predicated on 28 U.S.C. § 1343(3) and (4).

The remedy sought under 28 U.S.C. § 2201 is (1) a judgment declaring unconstitutional the New York Family Court practice of denying a jury trial to plaintiff and members of his class, defined as persons "charged with juvenile delinquency based on the alleged commission of an act which if committed by an adult would be a Class A or Class B felony, who are between 15 and 16 years of age at the time the act allegedly was committed, and who risk being sent to state prison," or (2) a judgment declaring unconstitutional New York Family Court Act § 758(b), which permits plaintiff and others similarly situated to be imprisoned within the state penal system without trial by jury.

An injunction is asked either (1) to restrain Family Court Judge Vincent J. Ferrara, before whom plaintiff's case is pending, from adjudicating his juvenile delinquency without the right to a jury, or (2) if plaintiff is found, without the right to a jury, to be a juvenile delinquent, to restrain Judge Ferrara from committing him in accordance with the provisions of Family Court Act § 758(b).

On this motion plaintiff seeks the convening of a three-judge court and a temporary restraining order pursuant to 28 U.S.C. § 2284(3) staying the state court proceedings pending the convening of the three-judge court.

I.

The facts are not in dispute. In September of this year plaintiff was charged with juvenile delinquency on the allegation of possession of a deadly weapon and armed robbery, acts which, if committed by an adult, would constitute a Class B felony under New York law. His case falls within the jurisdiction of the New York Family Court, the exclusive practice of which is to deny jury trials.[1]

On plaintiff's appearance before Family Court Judge Ferrara September 8th, his attorney moved for a jury trial. The motion was denied. A motion for leave to appeal to the Appellate Division, First Department, under Family Court

---

1. The Family Court Act is neutral with regard to jury trials, that is, it neither requires nor prohibits them. It is agreed, however, that, as stated in the text above, the exclusive practice of the Family Court is to try cases without a jury.

Act § 1112 was denied by that court on November 4th. No further appeals are available under state law. Plaintiff's trial is presently scheduled to commence before Judge Ferrara on December 16th.

Most children tried by the Family Court, if adjudicated as juvenile delinquents and ordered in custody, are placed, pursuant to §§ 756 and 758(a) of the Act, in state training schools operated by the State Department of Social Services "for the training and care of children." (Social Services Law, McKinney's Consol.Laws, c. 55, § 425).

On the other hand, plaintiff (and members of his class) may be placed in correctional institutions in accordance with Family Court Act § 758(b), which provides:

"Upon an adjudication of delinquency of a person who is fifteen years of age at the time of commission of any act which, if committed by an adult, would be a class A or a class B felony as defined in the penal law, commitment may be for males to Elmira reception center * * *"

The Elmira reception center is operated by the State Department of Corrections and is not a state training school. It is a facility for "reception, classification and program-planning" until prisoners are permanently assigned within the state penal system.[2] (Correction Law, McKinney's Consol.Laws, c. 43, § 60). All inmates at the center with the exception of persons in plaintiff's class are sixteen to twenty-one years of age and were originally charged with crimes in the Criminal Court, where, of course, they had a right to jury trial.

Under the circumstances of his case and the provisions of the Family Court Act, plaintiff, if adjudicated as a juvenile delinquent, may be held in custody for up to three years and apparently has no right to release on bail pending appeal after trial.

If a temporary restraining order were granted on this motion, plaintiff would not be released from custody, and no such relief is presently requested.

II.

On this state of facts plaintiff claims violation of his rights to due process of law and equal protection under the Fourteenth Amendment, and against cruel and unusual punishment under the Eighth Amendment.

Plaintiff states that under the principles as to the rights of juvenile defendants enunciated in In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), complemented by the decisions as to the right to jury trial in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), the denial of a jury trial in the circumstances of this case deprives him of his liberty without due process. He argues that he and his class are being denied equal protection in that they are (1) set apart in the state penal system as the only class committed to Elmira (or, presumably, any correctional institution) without the right to a jury trial, and (2) set apart in the Family Court system as the only class to be sentenced to a term in the state penal facilities while all others are sentenced to training schools. He contends that these constitutional defects should be remedied either (1) by requiring a jury trial for all juveniles who can be sentenced under Family Court Act § 758(b), or (2) by declaring § 758(b) unconstitutional in the absence of a right to jury trial.

As to the Eighth Amendment violation, plaintiff asserts that it is infliction of cruel and unusual punishment for him, a fifteen-year old prisoner, to be incarcerated in an institution which is run by the State Department of Cor-

2. Affidavits submitted by the plaintiff establish that there have been cases, though they may be few, in which persons sentenced under § 758(b) have been transferred from Elmira to a state prison.

rections and populated by older offenders.

Plaintiff concludes that, pending the convening of a three-judge court, a temporary restraining order should protect him against the irreparable harm of imprisonment (among older offenders) without a jury trial. He argues that the anti-injunction statute (28 U.S.C. § 2283) does not bar the court from granting injunctive relief, and even if it did, the court would still have jurisdiction to grant a declaratory judgment.

The defendants contend that the complaint fails to state a claim within the court's jurisdiction, that the case does not come within any of the exceptions to the anti-injunction statute, and that this court is therefore barred from granting relief; and that, in any event, plaintiff has not shown the extraordinary need which the law requires for interference by federal courts in state criminal proceedings.

As to the request for a declaratory judgment, defendants suggest that, since two cases are presently pending before the United States Supreme Court which will determine the question of the right to a jury trial in cases of juvenile delinquency, and since Abbott Laboratories v. Gardner, 387 U.S. 136, 155, 87 S.Ct. 1507, 1519, 18 L.Ed.2d 681 (1967), held that "[i]t is grounds for the denial of such relief that 'the same issue is pending in litigation elsewhere,'" the motion should be denied.

As further defenses, it is claimed that there is no constitutional right to a jury trial in juvenile cases and that the action should not be designated a class action because the class as alleged is "vague and nebulous, and its members (if any) may be differently situated from plaintiff."

### III.

Before reaching the question of whether the plaintiff has presented a substantial constitutional question and is entitled to the protection of a temporary stay, I deal with the issues raised by the defendants.

A. Jurisdiction. Since the plaintiff has not been tried, may not be sentenced under § 758(b), may not be committed to Elmira, and will have the right to appeal conviction and sentence after trial, the defendants say that no justiciable controversy here exists. If this were so, this court would of course be without jurisdiction under Article III of the Constitution, but it is not. In Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), plaintiffs, married women, sued to declare unconstitutional Connecticut laws which they alleged prevented them from securing medical advice as to contraception. Finding that there was no threat of enforcement of the law against the plaintiffs, that they stood in no imminent danger of harm, and therefore that no justiciable controversy existed, the opinion remarked:

> "This Court cannot be umpire to debates concerning harmless, empty shadows." *Poe, supra* at 508, 81 S. Ct. at 1758.

But where a fifteen-year old boy is concededly threatened with the possibility of a three-year commitment to a penal institution without a jury trial, we have no "harmless, empty shadows." The decisions in In Re Gault, *supra*, Duncan v. Louisiana, *supra* and Baldwin v. New York, *supra*, light too clear a path for us to regard the threat of harm here as empty or shadowy. Support for this conclusion is found in Conover v. Montemuro, 304 F.Supp. 259 (E.D.Pa. 1969). There Judge Fullam found without hesitation that the court had jurisdiction under 28 U.S.C. § 1343(3) to entertain a claim for the dual relief sought where, as here, a fifteen-year old arrested, non-tried boy challenged the constitutionality of Pennsylvania laws and practices relating to the trial of juveniles. Nor does Anonymous v. State of New York, Civil No. 68–3259 (S.D.N.Y. 1969), compel an opposite conclusion. There Judge Ryan dismissed an action in which a three-judge court was requested, finding that "plaintiff has suffered no actionable injury and * * *

there is no controversy over which this Court may take hold." But in *Anonymous*, the plaintiff had not requested a jury trial, was in the custody of her mother, and above all, if convicted, would not have been sentenced to a penal institution. Here the plaintiff has expressly demanded a jury trial (and exhausted his remedies in that regard), is presently in state custody, and faces the undisputed possibility of commitment to prison.

■ B. *The Anti-Injunction Statute*. The claim that this case does not fall within one of the exceptions to 28 U.S.C. § 2283 is incorrect. Section 2283 reads in relevant part:

"A court of the United States may not grant an injunction to stay proceedings in a State court *except as expressly authorized by Act of Congress * * *"* (Emphasis added.)

Here the plaintiff seeks the convening of a three-judge court and a temporary restraining order pending the convening of that court. 28 U.S.C. § 2284(3) expressly authorizes the granting of such a temporary restraining order, and accordingly the case falls within an exception to the anti-injunction statute (§ 2283).

C. *Abstention*. In stating that plaintiff "has not shown the extraordinary need required to justify such rare interference with state criminal processes," the defendants suggest that the court abstain from exercising its jurisdiction.

In the first place, it should be observed that here we are not dealing with state "criminal processes." The State of New York, in enacting the Family Court Act, has made a legislative determination that offenses committed by persons below the statutory cut-off age are not crimes.

"The New York State Family Court is a civil court."

In Re Lang, 44 Misc.2d 900, 255 N.Y.S.2d 987, 991 (1965). "Because the State is supposed to proceed in respect of the child as *parens patriae* and not as adversary, courts have relied on the premise that the proceedings are 'civil' in nature and not criminal * * * *"*

Kent v. United States, 383 U.S. 541, 555, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84 (1966).

While *Kent* goes on to remark that the states have therefore asserted that "the child cannot complain of the deprivation of important rights available in criminal cases," nevertheless it supports the proposition that the proceeding is civil in nature. But assuming, arguendo, that the proceeding is quasi-criminal (and certainly the results would be those of criminal proceedings if plaintiff is committed to a penal institution for three years), nevertheless the defendants' argument fails.

■ The doctrine of abstention does not apply to a request for declaratory relief. As the Court stated in Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967):

"We hold that a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." (at 254, 88 S.Ct. at 399).

Furthermore, here we deal with an application to convene a three-judge court. In such a case the Supreme Court has held:

"When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute. Those criteria were assuredly met here, and the applicable jurisdictional statute therefore made it impermissible for a single judge to decide the merits of the case,

either by granting or by withholding relief." Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962).

The case at hand meets the *Idlewild* test.

In this Circuit, Wright v. McMann, 387 F.2d 519 (1967), instructs as to abstention:

"* * * the latest pronouncement on the subject by the Supreme Court emphasizes that the doctrine is to be applied 'only in narrowly limited "special circumstances." ' Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444, * * *" *Wright, supra,* at 524.

And further,

"[i]t is reasonable to conclude that cases involving vital questions of civil rights are the least likely candidates for abstention, e. g., McNeese v. Board of Education, supra, 373 U.S. 668 at 673–674, 83 S.Ct. 1433, 10 L. Ed.2d 622, * * *" *Wright, supra,* at 525.

■ Defendants rely heavily on Richardson v. Dudley, 295 F.Supp. 181 (S.D. N.Y.1969), for the proposition that abstention should be exercised here. It is true that in *Richardson* a three-judge court of this district emphatically held, in circumstances comparable to those in the case at hand (but not a juvenile case) that a federal court ought to abstain from interfering with state criminal proceedings, as indeed the Supreme Court (see, e. g., Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951), and Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963)), and many a lower court have normally held. But *Stefanelli* and its progeny do not deal with the convening of a three-judge court, and in *Richardson* the single judge to whom the application for a three-judge court was made, although he joined in abstaining as a member of the three-judge court, did *not*, of course, abstain from convening the court. As stated in Sanchez v. Wyman, Civil No. 70–2129 (S.D.N.Y.1970):

"It may be that the three-judge court, once convened, would find this situation to present a proper one for abstention * * * However, it also appears that abstention is for such a court, and such a court alone."

D. *The Pendency of Supreme Court Determination.*

■ While it is true that a determination by the Supreme Court in pending cases that persons charged with juvenile delinquency are entitled to jury trial would dispose of the issue in the present case, that proposition is not a sufficient reason for abstaining from a decision here. In the first place, plaintiff's trial is scheduled to commence within approximately a week, and it is reasonable to believe that threatened harm of imprisonment without the right to a jury trial, if it takes place, will have occurred well in advance of Supreme Court action. Secondly, if the Supreme Court decides that jury trials are not required in *all* juvenile cases, its opinion may well leave open the question whether, when a fifteen-year old faces the possibility of a three-year commitment to prison, a jury trial is nevertheless required. Finally, it is to be observed that the cases on which defendants rely, such as Abbott Laboratories v. Gardner, *supra,* merely held that a stay is discretionary where the issue is pending elsewhere. Here, discretion requires action rather than abstention. It is true that in Socialist Workers Party v. Rockefeller, D.C., 314 F.Supp. 984, 994–995 (1970), also cited by defendants, the court abstained from deciding one of the issues before it because of the pendency of matters before the Supreme Court. But there the Supreme Court had acted negatively on the issue in prior cases. The holding is therefore inapposite here.

E. *The Constitutional Right to a Jury Trial.* It need only be observed as to defendants' contention that there is no constitutional right to a jury trial in cases of juvenile delinquency that the question here is not whether such a right has been established, but whether

plaintiff raises a substantial constitutional question that, in his circumstances, he is entitled to such a trial. That question is discussed below.

■ F. *Class Action.* The issue whether the case may properly be brought as a class action is, of course, not a proposition the determination of which bars the court from entertaining the case at hand or convening a three-judge court or granting a temporary restraining order.

### IV.

I come now to the merits of the motion.

#### Is There a Substantial Constitutional Question?

In Duncan v. Louisiana, *supra,* the Supreme Court held that the Sixth Amendment right to jury trial fell within the due process clause of the Fourteenth Amendment. Stressing the vital role of the jury trial in our adjudicatory process, the Court observed:

"The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government * * * The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the complaint, biased, or eccentric judge. * * * Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges * * * The deep commitment of the Nation to the right of jury trial in serious criminal cases as a defense against arbitrary law enforcement qualifies for protection under the Due Process Clause of the Fourteenth Amendment, and must therefore be respected by the States." *Duncan, supra,* 391 U.S. at 155–156, 88 S.Ct. at 1451, 20 L.Ed.2d 491.

The year before *Duncan,* the Supreme Court had determined in In Re Gault, *supra,* that the standards of due process applied to adjudication of juvenile delinquency. Although *Gault* was the watershed declaration of general principles as to the rights of juvenile offenders, the decision did not determine the right to jury trial in cases of juvenile delinquency. Nevertheless the thrust of the decision was so apparent that this court has held that *Gault* compels the grant of jury trials to juveniles within the federal system.

"It is clear to us that an FJDA [Federal Juvenile Delinquency Act] proceeding which may lead to a juvenile's loss of liberty by incarceration, for purposes of the Sixth Amendment right to trial by jury, is in nature a criminal prosecution, and the constitutionally guaranteed right of a trial by jury in all federal criminal prosecutions must, therefore, accompany such a proceeding. In our view, this conclusion is mandated by the Supreme Court's discussion of the privilege against self-incrimination in *Gault.*" Nieves v. United States, 280 F.Supp. 994, 1004 (S.D.N.Y.1968).

The clear course charted by the Supreme Court in *Duncan* and *Gault* has been followed by it in the very recent cases of In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970).

In *Winship,* the Court extended the standards of due process to require that a determination of juvenile delinquency could not be made except upon proof beyond a reasonable doubt.

In *Baldwin,* the Court applied the *Duncan* rationale to hold unconstitutional the ancient practice of non-jury trials

in the Criminal Court of the City of New York. In holding that a person charged with a serious crime (punishable, as here, by imprisonment of more than six months) had the right to a jury trial, the Court observed that

"[t]he primary purpose of the jury is to prevent the possibility of oppression by the Government; the jury interposes between the accused and his accuser the judgment of laymen who are less tutored perhaps than a judge or panel of judges, but who at the same time are less likely to function or appear as but another arm of the Government which has proceeded against him." *Baldwin, supra,* at 72, 90 S.Ct. at 1890.

■ Bearing in mind the powerful momentum of *Duncan, Gault, Nieves, Winship* and *Baldwin,* it cannot be seriously contended that the plaintiff here, a fifteen-year old boy threatened with a prison term of three years, does not raise a substantial constitutional question in claiming that he is entitled to be tried by jury. Indeed, the very fact that the Supreme Court, as noted above, has granted certiorari in two cases which present a similar claim beyond doubt dignifies the issue at a level of substantiality. In the circumstances it would be an abdication of responsibility for the court to deny plaintiff's motion for the convening of a three-judge court, and indeed there is serious question as to whether a single judge has the power to do so. See Idlewild Bon Voyage Liquor Corp. v. Epstein, as quoted *supra*; also, Stratton v. St. Louis S. W. Ry., 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135 (1930).

The determination that plaintiff has presented a substantial constitutional question under the due process clause of the Fourteenth Amendment makes it unnecessary to observe at length as to whether he has also presented substantial questions under the equal protection clause and under the Eighth Amendment. As to the equal protection clause, it is sufficient to state at this stage of the proceedings that a question exists as to the inequality of treatment of plaintiff and the members of his class as compared to other juveniles, on the one hand, who cannot be sent to prison, or adult offenders, on the other, who may be imprisoned only after a jury trial or the express waiver of a jury trial. The Eighth Amendment claim appears less weighty, but be that as it may, the ultimate determination of all the constitutional issues must await the decision of the three-judge court.

*Temporary Restraining Order*

There remains for determination the question whether the state court proceedings should be stayed pending the convening of the three-judge court. The statute authorizes the issuance of such an order "to prevent irreparable damage" (28 U.S.C. § 2284(3)), and surely that criterion is met here.

■ As noted above, plaintiff's trial in the Family Court is scheduled to commence next week and can result in commitment to Elmira immediately thereafter. The damage which might thus occur before a convening of the three-judge court would clearly be irreparable, and is precisely the kind of injury which the statute is designed to prevent pendente lite. Under the circumstances, the proceedings in the state court ought not go forward until the three-judge court acts.

Accordingly, pursuant to 28 U.S.C. § 2284, the Chief Judge of this Circuit will be requested to convene a three-judge court forthwith. Pending the convening of the three-judge court, a temporary restraining order will be granted either enjoining defendants from trying plaintiff without the right to a jury or, if he is tried without a jury and convicted, from committing plaintiff to a penal institution.

The determination as to whether the case is appropriately brought as a class action, and if so, the propriety of the definition of the class, is deferred for decision by the three-judge court.

Submit order.